Tina Louise **GREENWOOD**, Appellant,

v.

The **STATE** of Texas, State.

Nos. 2–96–302–CR to 2–96–304–CR.

Court of Appeals of Texas,
Fort Worth.

July 10, 1997.

Cindy Stormer, Gainesville, for Appellant.

Janelle M. Haverkamp, District Attorney, John H. Hagler, Gainesville, for Appellee.

Before LIVINGSTON, RICHARDS and HOLMAN, JJ.

1. The three forged checks were for $80.00,

## OPINION

RICHARDS, Justice.

On December 9, 1994, appellant Tina Louise Greenwood entered a plea agreement whereby she pleaded guilty to three offenses of forgery by passing checks[1] in exchange for an agreed sentence of two years in a state jail facility, suspended, with five years of community supervision. On April 12, 1996, the State filed a Motion to Revoke Community Supervision alleging that appellant had tested positive for alcohol and cocaine and that she had failed to fully participate in a job search program in violation of the terms of her probation. Appellant pleaded "Not true" to the allegations in the motion. The trial court found that appellant had violated the terms of her probation by drinking alcohol and consuming cocaine. Accordingly, the trial court revoked appellant's probation and sentenced her to two years in the State Jail Division of the Texas Department of Criminal Justice. Appellant appeals the revocation of her probation to this court, alleging twelve points of error. We affirm in part and reverse and remand in part.

### CREDIT FOR TIME SERVED

In her first point of error, appellant argues the trial court abused its discretion in failing to give her credit for 581 days she served on her sentence prior to her commitment to the Department of Corrections following the revocation hearing.

### 1) 45 Days Between Initial Arrest and Guilty Plea

▇ This case presents an interesting situation in which two separate provisions of the Code of Criminal Procedure are in conflict. On the one hand, article 42.03 provides:

> In all criminal cases the judge of the court in which the defendant was convicted shall give the defendant credit on his sentence for the time that the defendant has spent in jail in said cause, other than confinement served as a condition of community supervision, from the time of his arrest and confinement until his sentence by the trial court.

$60.00, and $100.00.

TEX.CODE CRIM. PROC. ANN. art. 42.03, § 2(a) (Vernon Supp.1997). However, at the time appellant originally pleaded guilty and was placed on community supervision, article 42.12 provided:

(2) A judge *may* credit against any time a defendant is subsequently required to serve in a state jail felony facility after revocation of community supervision time served by the defendant *in county jail:*

(A) from the time of the defendant's arrest and confinement until sentencing by the trial court;

(B) as a condition of community supervision under Subsection (d) of this section; and

(C) after modification of community supervision.

(3) A judge *shall* credit against any time a defendant is subsequently required to serve in a state jail felony facility after revocation of community supervision any time served by the defendant *in a state jail facility* [2] after sentencing.

Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 4.01, 1993 Tex. Gen. Laws 3586, 3732 (emphasis added) (current version at TEX.CODE CRIM. PROC. ANN. art. 42.12, § 15(h) (Vernon Supp.1997)) [3] (hereinafter "former section 15(h)").

Because a revocation hearing is an extension of the original sentencing portion of the trial, it relates to a "criminal case" under article 42.03, section 2(a). *See Dittoe v. State*, 935 S.W.2d 164, 167 (Tex.App.—Eastland 1996, no pet.). Article 42.03, section 2(a) governs good time credit in "all criminal cases," but former section 15(h) specifically governs credit for time served in probation revocation proceedings in state jail felony cases. Thus, these two provisions are in conflict. *See id.* at 166–67.

Because these two statutes are in conflict, we must look to the Code Construction Act for guidance. *See id.* at 167. Section 311.026 of the Government Code provides:

(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

TEX. GOV'T CODE ANN. § 311.026 (Vernon 1988). Based on section 311.026, we agree with the *Dittoe* court that former section 15(h), the specific statute, controls over article 42.03, section 2(a), the more general statute. *See id.; Dittoe*, 935 S.W.2d at 167.

■ However, the Court of Criminal Appeals has recently ruled that former section 15(h) does not control in all situations. Where a defendant receives the maximum sentence authorized by law, the equal protection clause of the Fourteenth Amendment requires that the defendant receive credit for pretrial jail time if she was unable to post bond due to indigence, even though former section 15(h) provides that award of such

---

**2.** A "state jail facility" is a facility operated, maintained, and managed by the state jail division of the Texas Department of Criminal Justice to confine defendants sentenced by a judge to serve a term of confinement in a state jail felony facility following a grant of deferred adjudication for or conviction of an offense punishable as a state jail felony. *See* TEX. GOV'T CODE ANN. §§ 507.001(a), 507.002 (Vernon Pamph.1997).

**3.** The current version of section 15(h) provides:
(2) A judge may credit against any time a defendant is subsequently required to serve in a state jail felony facility after revocation of community supervision time served by the defendant in county jail from the time of the defendant's arrest and confinement until sentencing by the trial court.

(3) A judge shall credit against any time a defendant is subsequently required to serve in a state jail felony facility after revocation of community supervision any time served by the defendant in a state jail felony facility after sentencing.
TEX.CODE CRIM. PROC. ANN. art. 42.12, § 15(h)(2), (3) (Vernon Supp.1997); *see* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 4.01, 1993 Tex. Gen. Laws 3586, 3732, *amended by* Act of April 21, 1995, 74th Leg., R.S., ch. 76, § 3.10, 1995 Tex. Gen. Laws 458, 465; Act of May 28, 1995, 74th Leg., R.S., ch. 318, § 60, 1995 Tex. Gen. Laws 2734, 2755; Act of May 25, 1995, 74th Leg., R.S., Ch. 321, § 3.006, 1995 Tex. Gen. Laws 2774, 2816.

time is discretionary. *See Ex parte Harris,* 946 S.W.2d 79, 80–81 (Tex.Crim.App.1997) (per curiam); *see also Ex parte Chamberlain,* 586 S.W.2d 547, 548 (Tex.Crim.App. 1979); *Caraway v. State,* 550 S.W.2d 699, 704–05 (Tex.Crim.App.1977);.

Appellant was originally sentenced to two years' confinement in a state jail facility. This was the maximum possible sentence for her crime. *See* TEX. PENAL CODE ANN. § 12.35(a) (Vernon 1994). Additionally, the record reflects that the trial court found appellant to be indigent when it appointed her counsel. Therefore, under the holding of *Harris,* appellant is entitled to the 45 days she served in the county jail between her initial arrest and the hearing at which she pleaded guilty.

### 2) 34 Days Between Arrest on Revocation Warrant and Revocation (April 12, 1996 to May 16, 1996)

■ In *Harris,* the Court of Criminal Appeals held that former section 15(h) does apply to time a defendant serves in custody pursuant to the State's motion to revoke probation. *See Harris,* 946 S.W.2d at 81. This is because a defendant is not entitled to post bond while in custody pursuant to a State's motion to revoke; therefore, the equal protection rule enunciated in *Caraway* and *Chamberlain* does not apply. *See id.*

Therefore, we hold that it was within the trial court's discretion to deny appellant credit for time she served between April 12, 1996, when she was arrested on the revocation warrant, and May 16, 1996, when her probation was revoked and she was sentenced to two years in a state jail facility.

*See* 1993 Tex. Gen. Laws at 3732.[4] Further, based on the record presented to us in this case, we cannot say that the trial court's actions were so arbitrary or unreasonable as to amount to an abuse of that discretion.

### 3) 12 Days After Final Sentencing While Awaiting Transfer to a State Jail Facility

■ We agree with appellant that she is entitled to credit for the twelve days she served in the county jail after the final revocation while she was awaiting transfer to a state jail facility. The trial court's judgment revoking community supervision, dated May 16, 1996, indicated that appellant's sentence was not to begin until "arrival at State Jail Facility." Jail records indicate that appellant was not released to the custody of the state jail division until May 28, 1996. Thus, appellant did not receive credit for the twelve days that she served in the Cooke County Jail after her probation was revoked but before she entered a state jail facility.

This time was not served "from the time of defendant's arrest and confinement until sentencing by the trial court" under former section 15(h). *See* 1993 Tex. Gen. Laws at 3732. Likewise, because this was time served *after* appellant was sentenced by the trial court, this time is not covered by article 42.03, section 2(a) as it was not served "from the time of [appellant's] arrest and confinement until [her] sentence by the trial court." *See* TEX.CODE.CRIM. PROC. ANN. art. 42.03, § 2(a) (Vernon Supp.1997).

Without a statutory provision to govern this situation, we hold that appellant is entitled to credit for the twelve days she served

4. We are not confident that former section 15(h), or current article 42.12, section 15(h) for that matter, withstand constitutional scrutiny. In *Ex parte Canada,* the Court of Criminal Appeals struck down a statute giving the trial court discretion to grant or deny time credit to a parolee confined pursuant to a prerevocation warrant. *See Ex parte Canada,* 754 S.W.2d 660, 665–68 (Tex.Crim.App.1988). While noting that there appears to be no federal constitutional right to credit for any period of confinement pending a parole revocation hearing, the court held that the statute in question violated article I, section 19 of the Texas Constitution. *Id.* at 666, 668. The court reasoned that "the discretionary authority

to deny time credit to the parolee awaiting revocation constitutes a 'punitive policy' ... that may chill the parolee's decision to exercise his constitutional right to a pre-revocation hearing .... because the parolee who waives his right to a hearing and his parole is revoked will immediately begin to accrue time toward the completion of his sentence." *Id.* at 667–68 (citation omitted).

However, in this case, we are not presented with a constitutional challenge to former section 15(h). Moreover, without Court of Criminal Appeals authority to the contrary, we will not rule on this issue.

awaiting her transfer to a state jail facility. Equity and the spirit of article 42.03, section 2(a) indicate to us that appellant should not lose the twelve days simply because no one from the state jail facility came to pick her up sooner.

### 4) Time Served at Burnet Subdivision Abuse Felony Punishment Facility and the Salvation Army

Appellant asserts that she is entitled to credit for the time that she served in the Burnet Subdivision Abuse Felony Punishment Facility and the Salvation Army. The record indicates that on May 8, 1995, the trial court modified appellant's probation and ordered her to serve, as a condition of her probation, a term of confinement and treatment in a substance abuse treatment facility of not less than six months or more than one year followed by a drug or alcohol abuse continuum of care treatment plan. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 14 (Vernon Supp.1997). Appellant was admitted to the Burnet Subdivision Abuse Felony Punishment Facility pursuant to this order. After completing treatment at the Burnet unit, the court ordered that appellant be released to the Salvation Army as part of the Continuum of Care program required by her probation.

Because this time was neither served in a state jail facility nor in the county jail, it is not governed by former section 15(h). *See* 1993 Tex. Gen. Laws at 3732. It is, however, governed by article 42.03, section 2(a) which disallows credit for "confinement served as a condition of community supervision." *See* TEX.CODE CRIM. PROC. ANN. art. 42.03, § 2(a) (Vernon Supp.1997). Therefore, we hold that the trial court did not err in refusing to give appellant credit for any time she served in the Burnet Subdivision Abuse Felony Punishment Facility or the Salvation Army, as that time was served as a term of appellant's probation.

### 5) Good Time Credit

Finally, appellant argues that she is entitled to good time credit for the time that she has served. However, we can find no controlling authority indicating that appellant would be entitled to good time credit for any of the time she has served in these cases.

### 6) Summary of Credit for Time Served

In summary, we overrule appellant's first point of error to the extent that she requests credit for (1) time served in the county jail from the time of her arrest on the revocation warrant until her probation was revoked; (2) time served in the Burnet Subdivision Abuse Felony Punishment Facility and the Salvation Army terms of her community supervision; and (3) good time credit. However, we sustain appellant's first point of error to the extent that she requests credit for (1) the 45 days she served in the county jail between her initial arrest and the hearing at which she pleaded guilty; and (2) the twelve days she served in the county jail after her probation had been revoked while she was awaiting transfer to a state jail facility.

### PRETRIAL MOTIONS

In her fifth point of error, appellant argues that the trial court erred in failing to rule on her discovery motion. In her sixth point of error, appellant contends that the trial court erred when it refused to rule on her request for a disinterested expert witness.

On April 24, 1996, the trial court appointed an attorney to represent appellant in the probation revocation proceeding and set the hearing for May 16, 1996. On May 8, 1996, appellant filed a motion for discovery and a motion to provide funds for a disinterested expert witness to assist counsel in preparing to contest the results of appellant's urinalysis.[5] On May 16, 1996, the court held a hearing on the petition to revoke appellant's probation. After the State had announced ready, appellant announced that she was not ready and filed a written motion for continuance. The motion listed as grounds for the continuance the lack of discovery and the failure of the trial court to provide appellant funds to hire an expert. The trial court denied the motion for continuance. Then, the following exchange took place:

---

**5.** *See Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

[DEFENSE COUNSEL]: May we have a ruling on our pretrial motions and the discovery?

THE COURT: Have a ruling on them?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: They were brought to my attention this morning. It's a little bit late for me to rule on them.

[DEFENSE COUNSEL]: So it's your ruling that—

THE COURT: I'm not going to rule on them. That's my ruling.

The record does not indicate that appellant objected to the trial court's refusal to rule on her motions.

■ To preserve a complaint for our review, a party must obtain a ruling *or object to the court's refusal to rule.* *See* TEX.R.APP. P. 52(a) ("If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint."); *Callahan v. State,* 937 S.W.2d 553, 557 (Tex. App.—Texarkana 1996, no pet.). Therefore, because appellant did not object to the trial court's refusal to rule on her pretrial motions, she has failed to preserve error on those points.

We also note that because appellant did not file a motion for new trial or make a bill of exception, the record is devoid of any reference to what, if anything, appellant would have done differently in the hearing if the court had granted her discovery motion or how appointment of an independent expert would have impacted her trial strategy. We overrule appellant's fifth and sixth points of error.

■ In her fourth point of error, appellant argues that the trial court erred in denying her motion for continuance based on the lack of discovery and the court's failure to appoint her an expert witness. The Code of Criminal Procedure provides that "[a] criminal action may be continued on the written motion . . . of the defendant, upon sufficient cause shown." TEX.CODE CRIM. PROC. ANN. art. 29.03 (Vernon 1989). A motion for continuance is addressed to the discretion of the trial court and will not be reversed on appeal unless it is shown that the court abused its discretion. *See Matamoros v. State,* 901 S.W.2d 470, 478 (Tex.Crim.App.1995); *Hullaby v. State,* 911 S.W.2d 921, 927 (Tex.App.— Fort Worth 1995, pet ref'd). In order to find an abuse of discretion in refusing to grant a continuance, there must be a showing that the defendant was prejudiced by counsel's inadequate preparation time. *See Heiselbetz v. State,* 906 S.W.2d 500, 511–12 (Tex.Crim. App.1995). Appellant's counsel did not make a bill of exception or file a motion for new trial to explain how, if at all, appellant was prejudiced by counsel's inadequate preparation time. Therefore, the record does not indicate that the trial court abused its discretion in denying appellant's motion for continuance. We overrule appellant's fourth point of error.

## ADMISSION OF APPELLANT'S CONFESSION

### 1) Limited Use Doctrine

■ In her third point of error, appellant argues that the trial court erred in refusing her request to take the stand under the limited use doctrine to testify about the voluntariness of her confession. At the end of appellant's presentation of evidence, the following exchange took place:

[DEFENSE COUNSEL]: Then, Your Honor, may we call [appellant] [for] the limited purpose of establishing the voluntariness of the confession that the State has entered, I believe it's State's Exhibit 2?

THE COURT: No.

[DEFENSE COUNSEL]: There is coercion involved in the giving of that statement.

. . . .

We rest.

The record does not indicate that appellant's counsel offered a bill of exception or filed a motion for new trial to indicate what, if anything, appellant would have testified to concerning the voluntariness of her statement.

We agree with appellant that she had a right to testify at the hearing for the limited purpose of determining whether her statement was voluntarily given without waiving

her state and federal rights against self incrimination. *See Lindley v. State,* 635 S.W.2d 541, 543 (Tex.Crim.App. [Panel Op.] 1982). However, in this case, the record is devoid of any reference to what, if anything, appellant would have testified to. As such, appellant has failed to preserve error on the question of whether the trial court erred in refusing to allow her to testify under the limited use doctrine. *See* TEX.R.CRIM. EVID. 103(a)(2) ("Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and .... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."); *Johnson v. State,* 925 S.W.2d 745, 749 (Tex.App.—Fort Worth 1996, pet ref'd); *Stanley v. State,* 866 S.W.2d 306, 309 (Tex. App.—Houston [14th Dist.] 1993, no pet.) (defendant failed to preserve error on question of whether court erred in failing to allow evidence concerning voluntariness of confession where defendant did not make offer of proof or bill of exception to preserve for review the evidence that defendant claimed the trial court refused to admit). We overrule appellant's third point of error.

### 2) Admission of Appellant's Written Statement

■ In her second point of error, appellant argues that the trial court erred in admitting a written confession [6] she gave to Veronica Flowers, her counselor at the Salvation Army facility where she was required to reside as part of the continuum of care program required by her probation. The State offered appellant's written confession through Flowers's testimony. Generally speaking, Flowers testified that she asked appellant to write out the statement, that she recognized the handwriting on the statement as appellant's, and that the statement had been in Flowers's files from the time that appellant gave it to her until Flowers delivered it to the prosecutor. Appellant objected to the statement as follows:

[DEFENSE COUNSEL]: Your Honor, we would object to State's Exhibit No. 2. No proper predicate has been laid, it appears to be an illegal, coerced confession, which defense counsel was not provided with prior to the hearing, violates the Defendant's due process rights, violates the Fifth Amendment right, constitutes hearsay, and also appears to be a statement against interest that is not corroborated.

THE COURT: Overrule the objections, and admit State's Exhibit No. 2.

Neither side requested, and the trial court did not hold, a *Jackson v. Denno* hearing. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 1979); *Jackson v. Denno,* 378 U.S. 368, 380, 84 S.Ct. 1774, 1783, 12 L.Ed.2d 908, 918 (1964). After reviewing the record, we cannot find any testimony from any witness or other evidence regarding whether the statement was voluntary, whether *Miranda* [7] warnings were given, or whether appellant was in custody when she gave the statement.

Appellant argues that the statement was inadmissible as it did not comply with article 38.22, section 2 which requires that it be shown on the face of the written statement that the accused was given the required warnings. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 2 (Vernon 1979). While we agree that the statement does not show that any warnings were given, appellant's trial objection did not assert this ground. Accordingly, this argument is not preserved for our review. *See* TEX.R.APP. P. 52(a); *Ether-*

---

6. The written confession reads as follows:

Tina Greenwood
Mrs. Veronica
I got up and got dressed went to breakfast and than I left to go to work at 6:15 *am* on the 25*th* of March. While I was at work I took the test I didn't past. So I left I got down town, so I can catch the bus to come back here but I decieded to go and get me a 24 oz beer. So I drank it. I was very angry cause I didn't past the test. After I drank that I was on my way back here waiting on a bus there was this guy there he asked me if I got high and I told him I

use to but I don't no more. He took out this baggie with all this rock in it he asked me if I wanted to go and smoke some and I told him I didn't have any money and I wasn't going to give him any for it and he told me he was asking me to so I did. I left after that first hit because if I would of stayed I know what would happen.
[Errors in original.]

7. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*idge v. State*, 903 S.W.2d 1, 16 (Tex.Crim. App.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995) (objections that written statement was taken after accused invoked his right to counsel and that accused did not initial paragraph in statement indicating that accused waived his rights did not preserve for appeal claim that statement did not reflect that accused was informed of his rights *prior* to giving the statement); *Gonzalez v. State,* 783 S.W.2d 774, 778–79 (Tex.App.—Corpus Christi 1990, no pet.) (trial objection that statement violated *Miranda* did not preserve for appeal claim that statements were inadmissible under article 38.22).

Appellant also argues that the statement was inadmissible because it was not taken in compliance with *Miranda v. Arizona.* The Code of Criminal Procedure requires that "[i]n all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions." Tex.Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 1979). A trial court must hold a hearing under this section if the defendant objects to the statement as being involuntary, even if there is no specific request for a hearing. *See McNeill v. State,* 650 S.W.2d 405, 407 (Tex.Crim.App.1983); *Page v. State,* 614 S.W.2d 819, 821 (Tex.Crim. App. [Panel Op.] 1981); *Moore v. State,* 505 S.W.2d 887, 889 (Tex.Crim.App.1974).

In this case, the trial court did not hold the required hearing to determine the voluntariness of appellant's written statement. Moreover, while we agree that *Miranda* only applies to statements obtained through custodial interrogation, the record is silent as to whether appellant was in custody when she made the statement. *Cf. Wolfe v. State,* 917 S.W.2d 270, 282 (Tex.Crim.App.1996) (where State had presented evidence that accused was not in custody and that accused had freely and voluntarily agreed to talk, court did not err in failing to hold hearing because accused did not even allege that statement was made while in custody).

Therefore, we hold that the trial court erred in admitting appellant's written state-

ment, in the absence of any evidence she was not in custody when she made the statement, without first holding a hearing to determine the voluntariness of the statement.

■ Having found that the court erred in admitting the statement, we must now turn to the harmless error analysis required by our rules of appellate procedure:

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

Tex.R.App. P. 81(b)(2).

In conducting an analysis under this rule, we must ask whether, in light of the record as a whole, there is a reasonable possibility the argument might have contributed to the defendant's conviction or punishment. *See Denton v. State,* 920 S.W.2d 311, 312 (Tex. Crim.App.1996). We must examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. *See Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). In addition, we must consider how much weight the fact finder would probably place upon the error and determine whether declaring the error harmless would encourage the State to repeat it with impunity. *See id.* Other relevant factors that we must consider include the overwhelming evidence of guilt and its interaction with other evidence. *See Denton,* 920 S.W.2d at 312–13. However, overwhelming evidence of guilt may or may not play a role, depending on the particular error and the facts of the case. *See id.* at 313.

In this case, we conclude the erroneous admission of appellant's written statement was harmless. We begin by noting that the State's burden of proof at the revocation hearing was preponderance of the evidence rather than the normal criminal burden of beyond a reasonable doubt. *See Forrest v. State,* 805 S.W.2d 462, 464 n. 2 (Tex.Crim. App.1991); *Shaw v. State,* 622 S.W.2d 862, 863 (Tex.Crim.App. [Panel Op.] 1981).

We also note that the State presented unobjected-to testimony from Flowers that appellant had orally admitted that she had used alcohol. Erroneous admission of evidence is usually harmless where substantially the same evidence is properly admitted elsewhere. *See Hicks v. State*, 860 S.W.2d 419, 430–31 (Tex.Crim.App.1993), *cert. denied*, 512 U.S. 1227, 114 S.Ct. 2725, 129 L.Ed.2d 848 (1994).[8] In addition to appellant's oral statement, the State produced the results of a urinalysis test, which indicated that appellant had used cocaine and alcohol. While appellant did cross-examine the doctor who ran the company that performed the urinalysis, that cross examination did not reveal any statement that can be interpreted to mean that the urinalysis test performed in this case was flawed. Moreover, appellant did not present any evidence from any other source to contradict the urinalysis results.

Under these circumstances, considering the admission of appellant's written statement and its interaction with the other evidence in light of the lesser burden of proof, we hold that the court's error did not contribute to the revocation of appellant's probation. We overrule appellant's second point of error.

### FAILURE TO SUBPOENA APPELLANT'S WITNESSES

In her seventh point of error, appellant argues that the trial court erred in refusing her motion for continuance based on the failure of the Dallas County Constable's Office to serve her subpoenas on four[9] witnesses. The constable returned the subpoenas unserved because of "lack of cooperation from Salvation Army."

To preserve error on this issue, appellant would have had to file a sworn motion for new trial stating the testimony she expected

to present by the witnesses who were not present. *See Varela v. State*, 561 S.W.2d 186, 191 (Tex.Crim.App.1978); *Franklin v. State*, 858 S.W.2d 537, 539 (Tex.App.—Beaumont 1993, pet. ref'd). The record does not indicate that appellant filed a motion for new trial or made a bill of exception indicating what, if anything, she expected the missing witnesses to testify about. Therefore, no error is preserved for our review. We overrule appellant's seventh point of error.

### URINALYSIS RESULTS

In her eighth through eleventh points of error, appellant argues that the trial court erred in admitting various pieces of evidence concerning the urinalysis test that she failed.

### 1) Failure to Allow Appellant to Inquire Into the Accuracy of the Test

In her eighth point of error, appellant argues that the trial court erred in sustaining the State's relevance objection to her question "[A]bout how much did this [the urinalysis] machine cost?" In her eleventh point of error, appellant argues that the trial court erred in sustaining an objection to one of the questions she asked the State's expert. The relevant portion of the statement of facts regarding this point is as follows:

> [DEFENSE COUNSEL:] You run just one test on each specific sample of urine?
>
> [STATE'S EXPERT:] We run actually ten tests. It falls under all the categories of drugs of abuse.
>
> [DEFENSE COUNSEL:] One test for each type of drug?
>
> [STATE'S EXPERT:] Yes.
>
> [DEFENSE COUNSEL:] Why don't you run more than one test on each drug?
>
> [STATE'S EXPERT:] Well, it's a pretty sophisticated qualitative test, that one

---

**8.** While the oral admission only covered the use of alcohol and not the use of cocaine, we must affirm the trial judge's decision to revoke probation if it was correct on any ground. *See Williams v. State*, 910 S.W.2d 83, 86 (Tex.App.— El Paso 1995, no pet.) (where record supports one of several violations found by trial court, court of appeals need not address other violations found by trial court); *Hendley v. State*, 783

S.W.2d 750, 752 (Tex.App.—Houston [1st Dist.] 1990, no pet.) (proof of a single violation sufficient to support revocation).

**9.** One of the four witnesses appellant attempted to subpoena was Veronica Flowers who, as we have noted above, appeared for the hearing and testified.

run is sufficient. And it's been proven in the industry as being a reliable test, or reliable instrument.

[DEFENSE COUNSEL:] So you don't think that more than one test should be run?

[PROSECUTOR]: I object, Your Honor. That's been asked and answered.

THE COURT: Sustained.

Appellant failed to make a bill of exception or file a motion for new trial indicating what, if anything, she expected the answers to these questions to be. As such, no error is presented for our review. *See* TEX.R.CRIM. EVID. 103(a)(2); *Johnson,* 925 S.W.2d at 749; *Stanley,* 866 S.W.2d at 309.

■ Moreover, a trial court's decision to exclude or admit evidence is subject to an abuse of discretion standard on appeal. *See Osby v. State,* 939 S.W.2d 787, 789 (Tex. App.—Fort Worth 1997, pet. filed). An abuse of discretion will be found "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State,* 842 S.W.2d 667, 682 (Tex. Crim.App.1992), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3036, 125 L.Ed.2d 723 (1993).

■ We agree that reasonable persons might disagree as to whether the cost of the urinalysis machine could "hav[e] any tendency to make the existence of any fact that is of consequence to the determination of the action [i.e., whether the urinalysis machine is reliable] more probable or less probable than it would be without the evidence." *See* TEX. R.CRIM. EVID. 401. We also agree that reasonable persons might disagree as to whether the State's expert's testimony that "Well, it's a pretty sophisticated qualitative test, that one run is sufficient" qualified as an answer to appellant's subsequent question. However, we decline appellant's invitation to hold that the trial court's decisions were so unreasonable as to amount to an abuse of

discretion.[10] We overrule appellant's eighth and eleventh points of error.

## 2) Admission of the Urinalysis Test Results

■ In her ninth point of error, appellant argues that the trial court erred in admitting, over objection, the urinalysis test results because the State failed to establish the scientific reliability of the Enzyme Multiplied Immunoassay Technique (EMIT) which was used to determine the content of drugs in appellant's urine. However, during the revocation hearing, appellant's only objection to the test results was as follows:

Your Honor, we'd object to State's Exhibit No. 3 [the urinalysis test report]. We'd object to any evidence concerning the alleged urine sample of Tina Greenwood as a chain of custody has not been properly established, and we've not been able to determine if it is in fact Tina Greenwood's sample, due to lack of discovery, proper predicate has not be[en] laid to the business records, and, also object to it under best evidence.

This objection was not sufficient to alert the trial court that appellant contended that the State had failed to establish the reliability of the urinalysis test. Therefore, appellant's trial objection does not comport with her argument on appeal and this issue is not preserved for our review. *See* TEX.R.APP. P. 52(a) (objection must state "specific grounds" in order to preserve issue for review); *Ethington v. State,* 819 S.W.2d 854, 858 (Tex. Crim.App.1991); *Sterling v. State,* 800 S.W.2d 513, 521 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991). We overrule appellant's ninth point of error.

## 3) Admission of State's Exhibit One

■ In her tenth point of error, appellant argues that the trial court erred in admitting, over objection, State's Exhibit One into evidence as there was not a proper business

---

10. We also note that the court did allow appellant to cross examine the State's expert on a wide range of topics concerning the reliability of the urinalysis machine. As such, even if the court's decisions to exclude this evidence were

an abuse of discretion, we would hold that they did not contribute to the revocation of appellant's probation and was therefore harmless. *See* TEX R.APP. P. 81(b)(2).

records predicate established. State's Exhibit One is a Salvation Army form signed by appellant authorizing the urinalysis test. As such, it did not contain any substantive evidence concerning what the results of the test were—it merely indicated that the test was in fact performed. Flowers testified to this fact without objection. Therefore, we hold that the error, if any, resulting from admission of State's Exhibit One did not contribute to the revocation of appellant's probation. See TEX.R.APP. P. 81(b)(2). We overrule appellant's tenth point of error.

## SUFFICIENCY OF THE EVIDENCE

In her twelfth point of error, appellant argues that if the trial court had excluded her written confession and the urinalysis results, the evidence would be insufficient to support a probation revocation. However, in reviewing the sufficiency of the evidence, we must consider all of the evidence admitted at trial *regardless of any claim that such evidence was improperly admitted. See Villalon v. State,* 791 S.W.2d 130, 133 (Tex.Crim. App.1990). Therefore, reviewing the record in the light most favorable to the court's judgment, we hold that a rational trier of fact could have found that appellant had ingested alcohol and/or cocaine thereby violating a term of her probation. *See Emery v. State,* 881 S.W.2d 702, 705 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1257, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995); *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). We overrule appellant's twelfth point of error.

## CONCLUSION

Because we have found that appellant has waived arguments under several of her points of error, we note that rule 52 "demand[s] that a party present its evidence and all arguments in support thereof to allow the trial court the opportunity to make a ruling." *Cruse v. State,* 882 S.W.2d 50, 52 (Tex.App.— Houston [14th Dist.] 1994, no pet.). As the *Cruse* court noted:

Preservation of error is not merely a technical procedural matter by which appellate courts seek to overrule points of error in a cursory manner. The appellate court must allow the trial court a certain amount of latitude in its direction of trial matters of excluding and admitting evidence or else the appellate court would simply usurp the authority of a trial court, rendering the trial process an exercise in futility.... Failing to present a particular argument to the trial court and then making such argument to the appellate court in effect usurps the trial court's function of ruling on such arguments.

*Id.*[11]

We overrule appellant's second through twelfth points of error. We overrule appellant's first point of error to the extent that she requests credit for (1) time served in the county jail from the time of her arrest on the revocation warrant until her probation was revoked; (2) time served in the Burnet Subdivision Abuse Felony Punishment Facility and the Salvation Army as a term of her community supervision; and (3) good time credits. However, we sustain appellant's first point of error to the extent that she requests credit for (1) the 45 days she served in the county jail between her initial arrest and the hearing in which she pleaded guilty; and (2) the twelve days she served in the county jail after her probation had been revoked while she was awaiting transfer to a state jail facility. Accordingly, we affirm appellant's conviction and sentence, but remand the case to the trial court with directions that appellant be given credit for an additional 57 days in accordance with our opinion.

11. None of our holdings concerning waiver of error should be read to indicate a finding that counsel was ineffective. To the contrary, our review of the record leads us to conclude appellant's counsel zealously represented her interests and served as an able advocate on her behalf.